# ATLAS TRANSFER COMPANY

*v.*

# PORTO RICO RAILWAY, LIGHT, & POWER COMPANY.

San Juan, Law, No. 927.

ON DEMURRER TO PARAGRAPH 6 OF THE ANSWER.

Civil Code of Porto Rico, § 1804—Corporations.

1. Owners or directors of an establishment or enterprise under the Civil Code are not limited to corporations. The provision as to damages under § 1804 covers all employers, corporate or incorporate.

Civil Code—Diligence of a Good Father of a Family.

2. The exception from liability when the diligence of a good father of a family has been employed is different from the exemption of a superior when he has selected a proper servant. The diligence required embraces proper supervision of the servant after he has been employed.

Civil Code—Nature of Responsibility.

3. The theory of this responsibility under the Spanish Code is based upon the relation of authority or superiority of the employer with the actual author of the damage; but this is a presumption *juris tantum*, and not *juris et de jure*, and may be rebutted.

Opinion filed June 12, 1913.

*Mr. N. B. K. Pettingill* for plaintiff.

*Mr. J. H. Brown* for defendant.

HAMILTON, Judge, delivered the following opinion:

This is a suit for damages alleged to have been caused by a car of the Porto Rico Railway, Light, & Power Company, which ran into a truck of the plaintiff stalled upon the railway track. Paragraph 6 of the answer sets up, among other things, that, even if the motorman of the trolley car was negligent, the defendant company is not responsible, because he is competent, and had been in the employ of the defendant for a long time, had been properly instructed in his work, and because the defendant "had used proper care and caution in the employment of the motorman." In the argument it was stated that this defense was based upon the last paragraph of § 1804 of the Civil Code of Porto Rico, which is as follows:

"The liability referred to in this article shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

This brings up for consideration two points: First, does § 1804 apply in its entirety to corporations; and, second, if it does, what is the scope of the exception?

1. There is no limitation in the section as to the nature of the persons who should be responsible, and, according to § 27 of the Civil Code, the word "person" is to be construed as applying to both natural and legal entities. Corporations originated in the Roman law, and, so far as their present form is concerned, were regulated by the Spanish law known as the Code of Commerce, dating from 1826. It was amended at different times until the final revision of 1885. Under it were organized all commercial corporations, and even partnerships. The section now incorporated in the Porto Rico Civil Code §

1804, is not found in the Code of Commerce, and the words "owners or directors of an establishment or enterprise" are not those used in that Code for what are commonly called boards of directors. These are usually called in the Code of Commerce "gestores," "gerentes," or "administradores." This merely proves, however, that the words "owners or directors of an establishment or enterprise" are used in a broader sense, and are not confined to corporations. If this were not so, § 1804 would not fully explain § 1803. In other words, whether the establishment or enterprise is incorporated or not, its owners and directors are liable for the damage caused by their employees within the scope of their employment. The provision in question, therefore, does apply to corporations.

2. The meaning of the exception from liability when the defendant "employed all the diligence of a good father of a family to avoid the damage" requires some consideration. The expression "good father of a family" is founded upon the old Roman *pater familias* and is peculiar to the civil law, where it often occurs. Something analogous is found in the common law where the defense of fellow servant is interposed. In such case the defendant may exempt himself from liability if he shows that he used due diligence in the employment of the fellow servant. Lake Shore & M. S. R. Co. v. Prentice, 147 U. S. 101, 37 L. ed. 97, 13 Sup. Ct. Rep. 261.

That, of course, is not this case, and the words used are so broad that not only did the legislature evidently have other principles in mind, but the court would not be justified in applying the principles of so limited an exception to so generic an expression.

The commentaries on the Spanish equivalent of this section

Atlas Transfer Co. v. Porto Rico R., L. & P. Co.

show that the liability imposed "is not a subsidiary one, but a direct one, as required by the cause that produced it." 12 Manresa, 608, 611. Compare Diaz v. San Juan Light & Transit Co. 17 P. R. R. 64, 69.

Can it be said that a corporation which alleges that it exercised care in the selection of an employee thereby "employed all the diligence of a good father of a family to avoid the damage?"

In Vélez v. Llavina, 18 P. R. R. 634, decided June 26, 1912, it is declared that the Civil Code "is based on the principle of the *juris tantum,* presumption of fault derived from the fact that due care and vigilance were not bestowed on the acts of the subordinate in order to avoid the damage, for which reason the last paragraph of § 1804 relieves from liability persons responsible for the acts of others when they prove that all the diligence of a good father of a family was employed by them to avoid the damage."

This is not the American doctrine of *respondeat superior,* but it goes further than the principle that the superior is absolved merely by showing the selection of a proper servant. And the diligence of a good father of a family certainly goes further than that, and must embrace proper supervision of the servant after he is properly employed.

3. A good deal has been said by the commentators upon the question of what is the nature of this responsibility of the good father of a family. For instance, according to the Italian theory, the liability is based upon a presumption of absolute fault in choosing or watching, which carries the consequence that there will be no liability where there was no freedom of choice or possibility of vigilance. Another, originating in the

preparatory labors on the French Code, found the reason in the use of the services of the employee, and concluded that there was a conclusive presumption *juris et de jure* of absolute fault.

The American doctrine of *respondeat superior* is based upon the theory that the principal is present in the acts of his agent, and is as much responsible as if actually performing the act itself. This is sometimes called the theory of representation. The theory of the Spanish Code, and consequently of the Porto Rican Civil Code, is declared by Manresa, vol. 12, p. 611, to be based upon the idea of responsibility of the person "by reason of the relation of authority or superiority sustained with the authors of the damage done. The law presumes that the cause of the same is imputable to them from their own wrong or negligence, considering them as the moral authors of the said damage because they have not exercised on their part the care or diligence necessary to avoid that their subordinates should occasion such damage. In conformity with which doctrine we have the judgment of the 18th of May, 1904, of the Supreme Court of Spain. But this presumption established by the law is not absolute, or *juris et de jure,* but *juris tantum,* and therefore yields to proof to the contrary." The same author in vol. 12, p. 617, declares that in this the Spanish Civil Code did not follow the Italian school, but the French doctrine, and is based on the fact that the obligation is imposed upon him who has under his authority or care the person causing the damage, derived from the fact that he has not exercised due care and vigilance over the acts of his subordinates to avoid such a result. "The cause of the obligation imposed is not representation or interest, but is the implied failure of the presumption of the duties of precaution and prudence imposed by the civil bonds

that join the person obligated with the persons for whom he should repair the damage caused. For this reason the Code places such an obligation among those that proceed from wrong or negligence."

See also, as to this, the commentaries of Sanchez Roman, vol. 4, p. 1022. As expressed by Martinez Ruiz on the Civil Code, p. 110: there "exist two kinds of negligence: that of persons subject to control, and that of other persons who ought to be legally responsible, and which give rise to the direct obligation to indemnify." The presumption, therefore, is rebuttable.

For courts, however, it is not so much material what is the ground of the presumption, as to enforce the presumption itself in a concrete case; and it is accordingly held in this case, therefore, that the diligence of a good father goes beyond the rule of mere care in the original selection.

It follows, therefore, that the defense presented in paragraph 6 is not sufficient, and the demurrer thereto is sustained.